```
            UNITED STATES DISTRICT COURT
            WESTERN DISTRICT OF LOUISIANA
                 LAFAYETTE DIVISION


UNITED STATES OF AMERICA,          :      Docket No. 16-00044
                                   :
                   Plaintiff,      :
vs.                                :      March 7, 2016
                                   :
DAVID HINES,                       :
                                   :
                   Defendant.      :      Lafayette, Louisiana
_____
```

```
        REPORTER'S OFFICIAL TRANSCRIPT OF THE PLEA HEARING
            BEFORE THE HONORABLE DEE D. DRELL
                UNITED STATES DISTRICT JUDGE
```

APPEARANCES:

FOR THE PLAINTIFF:              ALEXANDER C. VAN HOOK
                               United States Attorney's Office
                               300 Fannin St., Ste. 3201
                               Shreveport, LA  71101-3068

                               TONA BOYD
                               U.S. Dept. of Justice
                               Civil Rights Division
                               950 Pennsylvania Ave. N.W.
                               Washington, D.C.  20530

FOR THE DEFENDANT:             JOHN LANE EWING, JR.
                               Cazayoux & Ewing
                               257 Maximilian St.
                               Baton Rouge, LA  70802

```
              LARAE E. BOURQUE, RMR, CRR
                Federal Official Court Reporter
                800 Lafayette Street, Ste. 3103
                   Lafayette, LA  70501
```

I N D E X

WITNESS:                                                      PAGE:

SPECIAL AGENT SANDRA ZULLI
      Direct Examination by Mr. Van Hook.......... 23

```
 1                        P R O C E E D I N G S

 2                              (Call to order of the court.)

 3            THE COURT:  Thank you.  Be seated, please.

 4            MR. VAN HOOK:  Good afternoon, Your Honor.

 5            We're here this afternoon in the case of United States

 6   vs. David Hines, Criminal Number 6:16-0044.  I'm Alec Van Hook on

 7   behalf of the United States.  At counsel table with me is

 8   Tona Boyd from the Civil Rights Division and Special Agent

 9   Sandra Zulli from the FBI.

10            THE COURT:  All right.  Thank you.

11            And appearances, please, for the defense.

12            MR. EWING:  Good afternoon, Your Honor.  Lane Ewing for

13   Mr. David Hines who's present in court today.

14            THE COURT:  That's your client next to you at the

15   table, I assume.

16            MR. EWING:  It is, Your Honor.

17            THE COURT:  All right.  Thank you very much.

18            Mr. Van Hook, any filings, please.

19            MR. VAN HOOK:  Yes, Your Honor.

20            At this time I'd offer to file an executed Rule 11

21   package, which contains a Waiver of Indictment, a Bill of

22   Information, a copy of the Elements of the Offense, an Affidavit

23   of Understanding of Maximum Penalty and Constitutional Rights, a

24   Plea Agreement, and a written factual basis in support of the

25   plea, but we also have a witness here that is going to testify
```

```
1    pursuant to the factual basis.  We'd offer those at this time.

2              THE COURT:  All right.  Thank you for that.  If you'll

3    hand them to me.

4              As a preliminary matter, let's get this on the record.

5    This proceeding, I think, began earlier today in Lake Charles and

6    was unable to be completed.

7              Do y'all wish to make any record with regard to that at

8    this point?

9              MR. EWING:  None from the defense, Your Honor.  Only

10   that we consent to this proceeding happening as planned.  I've

11   had an opportunity to speak to my client about this and he

12   agrees.

13             THE COURT:  All right.  Thank you.

14             That is, he agrees to my taking --

15             MR. EWING:  Taking the guilty plea.

16             THE COURT:  -- the guilty plea this afternoon?

17             MR. EWING:  That's correct.

18             THE COURT:  And I assume that's without objection from

19   the government as well?

20             MR. VAN HOOK:  Yes, sir.  No objection.

21             THE COURT:  All right.  With regard to the matter of

22   the Victim Notification Act, any issues with regard to that or

23   any witnesses to be testifying in that regard?

24             MR. VAN HOOK:  No, Your Honor.  The witnesses will be

25   asked to testify at sentencing.
```

1        THE COURT:  All right.  And I assume there have been no

2    filed claims for restitution up to this point; is that correct?

3        MR. VAN HOOK:  No, Your Honor.

4        THE COURT:  Mr. Hines, I'm sure you have conferred with

5    your attorney.  It is my duty, however, this afternoon to inform

6    you that I'm going to be asking you a number of questions after

7    you promise to tell me the truth, and that being the case, if

8    your answers are substantively inaccurate, you could be charged

9    with perjury.  And that's not a threat or anything like that.  In

10   fact, I expect that you're here to be truthful anyway, but it is

11   still my duty to tell you those things so you'll be well-aware of

12   the circumstances under which you answer questions in open court.

13        Are you with me so far?

14        THE DEFENDANT:  Yes, sir.

15        THE COURT:  All right.  How does your client wish to

16   plead at this time, please?

17        MR. EWING:  Guilty, Your Honor.

18        THE COURT:  All right.  And that's guilty to?

19        MR. EWING:  Guilty to one charge under 18 U.S.C. § 242,

20   which is deprivation of rights under color of law.

21        THE COURT:  This is pursuant to, as I understand it, a

22   Bill of Information rather than by indictment; is that correct?

23        MR. EWING:  That's correct, Your Honor.

24        THE COURT:  All right.  Mr. Hines, is that correct?

25   Your attorney has stated that accurately?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  All right.  Even though you may have been

3     advised -- I'm sure you have by your attorney and have spoken

4     with him extensively about the case -- under Fifth Circuit

5     jurisprudence on what we know as Rule 11, I'm required to address

6     three core concerns before I can accept your guilty plea.

7          One of those, sir, is whether your guilty plea is

8     coerced in any way; the second is whether you fully understand

9     the nature of the charge against you; and the third is whether

10    you understand all the consequences of a plea of guilty.

11          So there are a number of questions I'll have to ask you

12    to assure myself that this is a valid guilty plea.  If at any

13    time, during this conversation we're about to have, you don't

14    understand something or you have a question, it's perfectly fine

15    for you to turn aside from the microphone and address anything

16    you want to your attorney.  Okay?

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  All right.  I need for you to raise your

19    right hand at this time.

20          THE COURTROOM DEPUTY:  Do you solemnly swear that the

21    testimony you will give in this case will be the truth, the whole

22    truth, and nothing but the truth, so help you God?

23          THE DEFENDANT:  Yes, ma'am.

24          THE COURTROOM DEPUTY:  Thank you.

25          THE COURT:  All right.  Thank you.

1          Do you understand having been sworn now, your answers

2    to my questions will subject you to the penalties of perjury or

3    of making a false statement if you don't tell me the truth?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  Okay.  And, Mr. Hines, what is your age as

6    of today?

7          THE DEFENDANT:  I'm 30 years old.

8          THE COURT:  What is your date of birth, please?

9          THE DEFENDANT:  10/14 of 1985.

10         THE COURT:  And how much education do you have?

11         THE DEFENDANT:  I graduated high school.

12         THE COURT:  And where was that?

13         THE DEFENDANT:  Franklin High School.  Franklin Senior

14   High School.

15         THE COURT:  In what city?

16         THE DEFENDANT:  Franklin, Louisiana.

17         THE COURT:  And when did you graduate, please?

18         THE DEFENDANT:  2004.

19         THE COURT:  So all of this sort of presumes you can

20   read and write the English language; is that right?

21         THE DEFENDANT:  Yes.

22         THE COURT:  With regard to your state of mind, are you

23   presently under a physician's care for anything having to do with

24   mental issues?

25         THE DEFENDANT:  No, sir.

1          THE COURT:  And have you taken any drugs, medicine,

2    pills, alcohol, anything like that, in the last 24 hours or so

3    that might cause you to be less than clearheaded this afternoon?

4          THE DEFENDANT:  No, sir.

5          THE COURT:  And do you have any mental or physical

6    problems that you believe would limit your ability to understand

7    what's happening in this courtroom?

8          THE DEFENDANT:  No, sir.

9          THE COURT:  Do you think you understand fully why

10   you're here today?

11         THE DEFENDANT:  Yes, sir.

12         THE COURT:  Okay.  Now, you need to understand you have

13   the right to have the assistance of counsel at all stages of the

14   proceedings against you.  Have you had now an adequate

15   opportunity to discuss this case with Mr. Ewing, your attorney?

16         THE DEFENDANT:  Yes, sir.

17         THE COURT:  And are there any motions that you think he

18   should have filed for you or other action that he should have

19   done you think that he's not done on your behalf?

20         THE DEFENDANT:  No, sir.

21         THE COURT:  Are you satisfied, then, to have him assist

22   you with the case?

23         THE DEFENDANT:  Yes, sir.

24         THE COURT:  All right.  Now, Mr. Ewing, do you have any

25   doubt as to Mr. Hines' competence to issue a guilty plea at this

```
 1    time?
 2                MR. EWING:  I do not, Your Honor.
 3                THE COURT:  All right.  Mr. Hines, under the
 4    Constitution and laws of the United States, you have a right to
 5    plead not guilty and to have the charges -- and in this case it's
 6    one charge -- tried by a jury of 12 people, all of whom would
 7    have to agree on a verdict.  Do you understand that?
 8                THE DEFENDANT:  Yes, sir.
 9                THE COURT:  And, likewise, at the trial you would be
10    presumed to be innocent, and the government would have the burden
11    of proving you guilty beyond a reasonable doubt.  In other words,
12    you would not, in a trial like that, have to prove your own
13    innocence.  Do you understand that?
14                THE DEFENDANT:  Yes, sir.
15                THE COURT:  All right, sir.  And in the course of the
16    trial, the witnesses for the government would have to come to
17    court and testify in your presence, and your attorney would have
18    a right to confront and cross-examine the witnesses against you,
19    he could object to evidence offered by the government, and he
20    could also offer evidence on your behalf if you chose to have him
21    do that.  Do you understand those things?
22                THE DEFENDANT:  Yes, sir.
23                THE COURT:  And also, Mr. Hines, if there were
24    favorable witnesses that you and your attorney wanted at the
25    trial and those people said they could not or would not come, you
```

1    could use the Court's subpoena power to make them appear.  Do you

2    understand that?

3                THE DEFENDANT:  Yes, sir.

4                THE COURT:  And also at the trial, while you would have

5    the right to testify if you chose to do that, you would also have

6    the right not to incriminate yourself, not to be compelled to

7    incriminate yourself, and therefore the right not to testify.

8    That's a constitutional right as well.  Do you understand that?

9                THE DEFENDANT:  Yes, sir.

10               THE COURT:  And if you had a trial and you chose not to

11   testify, the jury could not, for that account, convict you on the

12   violation being tried, and that's something that would be waived

13   and given up by this guilty plea.  Do you understand that?

14               THE DEFENDANT:  Yes, sir.

15               THE COURT:  All right, sir.  Mr. Hines, if you continue

16   in the guilty plea and if I accept your plea, do you understand

17   you will have waived your right to a trial and all the other

18   rights I've just discussed with you?

19               THE DEFENDANT:  Yes, sir.

20               THE COURT:  Put another way, there would be no further

21   trial after today, and I would enter a judgment of guilty, and

22   you would be sentenced at a later date simply on the basis of

23   your guilty plea.  Do you understand that, sir?

24               THE DEFENDANT:  Yes, sir.

25               THE COURT:  All right.  And if you continue in the

1    guilty plea, do you understand also you will have to waive your

2    right against self-incrimination since I will ask you some

3    questions in a little while to assure -- I mean, about what you

4    did in order to satisfy myself that you're guilty as charged.  So

5    you will be fully acknowledging your guilt here in open court.

6    Do you understand that?

7              THE DEFENDANT:  Yes, sir.

8              THE COURT:  All right.  And it's been explained to you,

9    has it, that this is a Bill of Information instead of a grand

10   jury indictment, and you would have a right to have this case

11   presented to a grand jury that was properly constituted prior to

12   coming to court?  Do you understand that?

13             THE DEFENDANT:  Yes, sir.

14             THE COURT:  And you do waive your right to a grand

15   jury?

16             THE DEFENDANT:  Yes, sir.

17             THE COURT:  All right.  Are you willing to waive and

18   give up your right to a trial and all the other rights I've just

19   discussed?

20             THE DEFENDANT:  Yes, sir.

21             THE COURT:  Has anybody threatened you or leaned on you

22   or forced you to plead guilty?

23             THE DEFENDANT:  No, sir.

24             THE COURT:  Anybody told you that if you don't plead

25   guilty, there would be other charges brought against you, further

1    charges, or any other kind of adverse action brought against you?

2              THE DEFENDANT:  No, sir.

3              THE COURT:  All right.  Now, the offense to which you

4    are offering to plead guilty is a felony offense, and if your

5    plea is accepted, of course you will be adjudged guilty of that

6    offense, and that adjudication may deprive you of valuable civil

7    rights.  I need to tell you that you could lose the right to

8    vote, the right to hold public office, the right to serve on a

9    jury, and the right to possess any kind of firearm.  Do you

10   understand that, sir?

11             THE DEFENDANT:  Yes, sir.

12             THE COURT:  Are you willing now to plead guilty because

13   you are in fact guilty as charged?

14             THE DEFENDANT:  Yes.

15             THE COURT:  And may I consider that a free and

16   voluntary act on your part?

17             THE DEFENDANT:  Yes, sir.

18             THE COURT:  All right.  Now, the Bill of Information

19   that we talked about earlier and was referenced by the lawyers,

20   you have had a chance to receive and review that and go over it

21   with your attorney, have you?

22             THE DEFENDANT:  Yes, sir.

23             THE COURT:  All right.  Well, that Bill of Information

24   provides that you're charged with deprivation of rights under

25   color of law in violation of 18 U.S.C. § 242.

1          It alleges essentially that on or about March 14, 2014,

2     in New Iberia, while you were acting under color of law and while

3     aided and abetted by others, you willfully deprived a person with

4     the initials R.T., who was an arrestee, of the right protected

5     and secured by the Constitution and laws of the United States to

6     be free from unreasonable seizure, which includes the right to be

7     free from the use of unreasonable force by a law enforcement

8     officer.

9          And the Bill of Information goes on to indicate that

10    you and another officer assaulted R.T. during the course of his

11    arrest in order to punish him for his prior assault on a relative

12    of a high-ranking Iberia Parish Sheriff's Office official.  The

13    offense is alleged to have involved the use of a baton, a

14    dangerous weapon, and it resulted in bodily injury to R.T.

15         Now, is that the same and correct offense that you

16    understood you would be entering a plea of guilty to?

17         THE DEFENDANT:  Yes, sir.

18         THE COURT:  All right.  Well, I'm required to tell you

19    also what the elements of the offense are, that is, the things

20    that the government would have to prove beyond a reasonable doubt

21    if you had a trial on this one count.

22         For you to be found guilty of this crime of deprivation

23    of rights under color of law in violation of 18 U.S.C. § 242, the

24    government would have to prove each of the following elements

25    beyond a reasonable doubt:

1    First, that you, the defendant, acted under color of

2    law;

3    Second, that you, the defendant, deprived R.T., that

4    named person, a person in the United States, of a right protected

5    or secured by the Constitution or laws of the United States; and

6    in this case the right to due process of law which includes the

7    right to be free from use of excessive force amounting to

8    punishment by a sheriff's deputy.

9    The third element is that you, the defendant, acted

10   willfully.

11   And the fourth is that the offense resulted in bodily

12   injury to the victim or involved the use of a dangerous weapon.

13   Now, do you understand each of those elements and the

14   charge against you?

15   THE DEFENDANT:  Yes, sir.

16   THE COURT:  Do you have any questions about any of

17   those things that you wish to ask your attorney?

18   THE DEFENDANT:  No, sir.

19   THE COURT:  All right.  Give me one second here.

20   (Pause in Proceedings)

21   THE COURT:  I was handed a Rule 11 package earlier, and

22   it contains several documents in it which have your signature on

23   them or purport to have your signature on them.  One of the forms

24   is a Waiver of Indictment that I mentioned earlier.  You did see

25   that and sign it in advance; is that correct?

```
1              THE DEFENDANT:  Yes, sir.

2              THE COURT:  All right.  I'm also going to sign it.

3              It has a copy of the Bill of Information in it also

4    signed by the attorneys in the case for the government.  The

5    elements of the offense signed by you, those I just went over.

6    There is an Affidavit of Understanding of Maximum Penalty and

7    Constitutional Rights, and that also has your signature on it.

8    There's the Plea Agreement, which also has your signature on it.

9    The Stipulation in Support of a Guilty Plea that likewise has

10   your signature on it.

11             This is in fact your signature on all of these

12   documents; is that correct?

13             THE DEFENDANT:  Yes, sir.

14             THE COURT:  And you did go over those carefully with

15   your attorney?

16             THE DEFENDANT:  Yes, sir.

17             THE COURT:  You'll notice in the Affidavit of

18   Understanding of Maximum Penalty and Constitutional Rights, it

19   provides specific penalties.  So I need to go over those with

20   you.  You may want to refer to that.

21             THE DEFENDANT:  Yes, sir.

22             THE COURT:  For Count 1 it correctly states that the

23   penalty for this is a term of imprisonment of not more than ten

24   years, or a fine of not more than $250,000, or both.

25   Additionally, a term of supervised release of not more than three
```

1    years in length in addition to any term of imprisonment.  And

2    also the special assessment of $100 at the time of the guilty

3    plea.

4              Do you understand those to be the penalties that could

5    be applicable to you in this case?

6              THE DEFENDANT:  Yes, sir.

7              THE COURT:  All right.  I'm going to have some

8    additional comment for you about a couple of other things.

9              Now, in federal court we have something that we call

10   Sentencing Guidelines, and those guidelines are published and

11   they are available.  Your attorney, I'm sure, is aware of those.

12   You all have had some discussion about the possible guidelines

13   that might be applicable here?

14             THE DEFENDANT:  Yes, sir.

15             THE COURT:  In this particular case, you understand

16   that the guidelines are advisory to the Court only, and that we

17   have the authority, as judges, to make variances or departures

18   from those guidelines, either upward or downward.  Do you

19   understand that?

20             THE DEFENDANT:  Yes, sir.

21             THE COURT:  Okay.  I told you also that you could

22   receive supervised release of not more than three years in

23   length.

24             The way this works is supervised release comes with

25   terms and conditions, and those will be explained to you along

1    the way.  Of course, you'll know what the terms and conditions

2    are in advance.  And if you violate those -- you have to abide by

3    them.  If you violate the conditions of supervised release at any

4    time during the period of release, you could be incarcerated for

5    time over and above any period of imprisonment ordered by the

6    Court.  So an incarceration period for a violation of the term of

7    supervised release could be as much as the full term of

8    supervised release initially ordered, but not more than two

9    years, regardless of the time of supervised release you had

10   already completed.

11          I try to explain that another way to say, you know, you

12   don't get good time on supervised release in other words.  It is

13   a separate requirement you have to complete, and you don't want

14   to violate any of the terms of it because it could mean

15   additional imprisonment.  Do you understand that?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  Okay.  Now, the Plea Agreement that we have

18   in this case, I assume -- you said you've signed it, and I assume

19   you're fully aware of what it contains; is that right?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  There are a couple of things in there that

22   I want to point out to you and be sure that you understand.  You

23   have certain obligations under the agreement.  The government

24   does as well.

25          The main one that's important for this present moment

1    is that if you successfully enter this guilty plea, the

2    government agrees that it would not prosecute you for any other

3    offenses known to the United States based on the investigation

4    which forms the basis of the Bill of Information.  You understood

5    that in advance, did you?

6            THE DEFENDANT:  Yes, sir.

7            THE COURT:  All right.  Upon your conviction -- I've

8    already told you this -- the Court has to assess you the $100 per

9    count.  So it's a total of $100 in this case.  And that

10   assessment has to be paid by you to the Clerk of Court.  My

11   understanding is you're going to be able to take care of that

12   pretty quickly.  Is the government satisfied that will be handled

13   appropriately?

14           MR. VAN HOOK:  Yes, Your Honor.

15           THE COURT:  Very well.

16           Now, I need to tell you one other word called

17   "restitution."  I don't know at this point one way or the other

18   whether restitution is appropriate, but I need to tell you that

19   restitution is something that the Court has the power to order in

20   appropriate cases, and if restitution is an appropriate thing to

21   order, the method of payment and the amount of restitution is

22   entirely in the Court's discretion.  Do you understand that?

23           THE DEFENDANT:  Yes, sir.

24           THE COURT:  All right.  Now, then, of course, you're

25   entering a guilty plea this afternoon.  The matter of cooperation

1    with the government is always a matter that's looked at in any

2    federal proceeding, and all of these matters, including the fact

3    that you have entered a guilty plea, are matters that are

4    examined at the time of sentencing.  Do you understand those

5    things?

6              THE DEFENDANT:  Yes, sir.

7              THE COURT:  Has anybody made any promises to you other

8    than those contained in the Plea Agreement?

9              THE DEFENDANT:  No, sir.

10             THE COURT:  And, counsel, would you all indicate

11   whether there are any side agreements at all?

12             Mr. Ewing?

13             MR. EWING:  No, Your Honor.

14             THE COURT:  Mr. Van Hook?

15             MR. VAN HOOK:  No, Your Honor.

16             THE COURT:  All right.  So after today, what will

17   happen, Mr. Hines, is that the lawyers may well furnish to the

18   Court -- they have every right to furnish to the Court

19   recommendations of sentence, and they may or may not agree on

20   what they think your sentence ought to be, but you need to

21   understand that any recommendation of sentence, agreed or not, by

22   the attorneys in the case is not binding on the Court, and you

23   could, just on the basis of your guilty plea, receive a sentence

24   that's more severe than that requested or recommended by the

25   attorneys in the case.  Are you with me on that?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Okay.  Has anybody made a prediction or

3     prophecy or promise to you as to what your sentence would

4     actually be?

5          THE DEFENDANT:  No, sir.

6          THE COURT:  Now, in federal court, the way we do

7     sentencing, it may be different from what you're perhaps familiar

8     with in state court, because after today there will be a

9     presentence investigation report ordered and conducted.  You'll

10    have the opportunity to give input to that, you and your

11    attorney, and you'll be talking with people in Probation and

12    Pretrial Services about that.

13         After that's received, it will have in it a calculation

14    of the guidelines, potential guidelines, the guidelines and their

15    applicability.  The sentencing judge will review all of that and

16    will then sentence you first based upon a calculation of the

17    applicable guideline range.  Then that range will be considered.

18    It's also possible that departures or variances under the

19    guidelines will be considered and the sentencing factors under

20    what we know as 18 U.S.C. § 3553(a).

21         Now, that's a particular statute that requires the

22    federal judges to look at a number of specific factors.  Those

23    factors include, generally, the nature and circumstances of the

24    offense and the history and characteristics of the defendant.

25         They include the need for the sentence imposed to

1   reflect the seriousness of the offense, promote respect for the

2   law, and to provide just punishment for the offense.

3          They also include the need to provide adequate

4   deterrence to criminal conduct where that's appropriate.

5          Another, where it's appropriate, is to protect the

6   public from further crimes of the defendant.

7          And another is the need to provide a defendant with

8   needed educational or vocational training, medical care, or other

9   correctional treatment in the most effective manner.

10          We also look at the kinds of sentences that are

11   actually available to the Court.  The guidelines indeed

12   themselves are one of the factors under this statute that we look

13   at.  We will look at all of that.

14          We also look at the need to avoid unwarranted

15   sentencing disparities among defendants with similar records who

16   are found guilty of similar conduct.

17          And the last one is the need to provide restitution to

18   any victims of the offense.

19          So we look at all of those particular factors and then

20   we come up with the actual sentence in the case.

21          Do you understand one of the big points that I'm trying

22   to get to you here is that your sentence is entirely up to me,

23   not up to any of the lawyers in the case?

24          THE DEFENDANT:  Yes, sir, I understand.

25          THE COURT:  Okay.  Another factor you need to know is

1    you have a right to appeal any sentence that's imposed upon you,

2    but the failure of the Court to adhere to any sentencing

3    recommendation by any of the lawyers in the case, agreed or not,

4    is not a basis for setting aside the guilty plea.  Do you

5    understand what I'm saying there?

6              THE DEFENDANT:  Yes, sir.

7              THE COURT:  Okay.  Are you sure?

8              THE DEFENDANT:  Yes.

9              THE COURT:  You look puzzled.

10             THE DEFENDANT:  No, sir.

11             THE COURT:  Okay.  Mr. Van Hook, because of the way

12   this came up, I'm not familiar.  Is there a pending or underlying

13   indictment?

14             MR. VAN HOOK:  No, Your Honor.

15             THE COURT:  So there would be nothing to dismiss later

16   on; is that correct?

17             MR. VAN HOOK:  Nothing to dismiss, Your Honor.

18             THE COURT:  All right.  Thank you.

19             All right.  So let me turn now to the government.

20             Mr. Van Hook, presentation of evidence to support this

21   count, please.

22             MR. VAN HOOK:  Yes, Your Honor.  The United States

23   would call Special Agent Sandra Zulli.

24             THE COURTROOM DEPUTY:  Do you solemnly swear that the

25   testimony you are about to give in this case will be the truth,

1  the whole truth, and nothing but the truth, so help you God?

2       THE WITNESS:  I do.

3  Whereupon,

4              SPECIAL AGENT SANDRA ZULLI

5  was called as a witness; after having been first duly sworn, was

6  examined and testified as follows:

7                DIRECT EXAMINATION

8  BY MR. VAN HOOK:

9  Q    Would you please state your name and occupation for the

10 record.

11 A    Sandra M. Zulli, special agent with the FBI.

12 Q    And could you spell your last name?

13 A    Z-U-L-L-I.

14 Q    And how long have you been a special agent?

15 A    Twenty years.

16 Q    And in your capacity as a special agent, have you been the

17 lead investigator of the facts surrounding this case?

18 A    Yes.

19 Q    And have you had an opportunity before today to review the

20 plea agreement in this case?

21 A    Yes.

22 Q    And have you had opportunity to look at the stipulation in

23 support of the guilty plea, the factual stipulation?

24 A    Yes.

25 Q    Okay.  I'm going to ask you to look at page 1 of that

1    stipulation.  I'm going to go through some of it, and the judge,

2    or counsel for the defendant, or I may ask you some clarifying

3    questions.  Is that okay?

4    A    Okay.

5    Q    If you look at the second paragraph there, what does it

6    essentially provide?

7    A    It provides a statement that the defendant admits that,

8    while acting under the color of law and while aided and abetted

9    by others, he willfully deprived R.T., an arrestee, of his

10   federally protected right not to be subject to an unreasonable

11   seizure, which includes the right to be free from the use of

12   unreasonable force by a law enforcement officer.

13   Q    Okay.  And it says that he acted under the color of law.  Is

14   it your understanding that the defendant was employed with the

15   Iberia Parish Sheriff's Office as a narcotics agent?

16   A    Yes.

17   Q    And he was so employed from 2011 until 2015 as a narcotics

18   agent?

19   A    That's correct.

20   Q    And he has worked for the Iberia Parish Sheriff's Office

21   since 2010.  Is that your understanding as well?

22   A    Yes.

23   Q    Okay.  Are you familiar with an event that took place on or

24   about March 14 of 2014 involving Mr. Hines?

25   A    Yes.

1    Q    And was he on or off duty on that day?

2    A    Off duty.

3    Q    Okay.  What happened?

4         And if you need to refer to the stipulation, feel free.

5    A    Mr. Hines was called by a narcotics supervisor and ordered

6    to report to the office of a high ranking IPSO official.

Mr. Hines and another narcotics agent met with the high ranking

8    IPSO official and another IPSO supervisor.  The high ranking IPSO

9    official told Hines and the other narcotics agent that a subject,

10    R.T., had assaulted an elderly relative of the high ranking

11    official.

12    Q    Okay.  Let me stop you there.  R.T. T, those are initials

13    for the name of the victim in this case?

14    A    Yes.

15    Q    Okay.  Go ahead.

16    A    The high ranking official told Hines and the other narcotics

17    agent to take care of R.T.  Hines knew, based on his experience

18    in the narcotics unit and based on prior conversations, that the

19    high ranking IPSO official wanted the defendant and the other

20    narcotics agent to use unlawful force to punish R.T. for his

21    assault on the official's relative.  The defendant, knowing the

22    high ranking official's intent and intending to further his

23    unlawful objective, went with the other narcotics agent to find,

24    assault, and arrest R.T.

25    Q    Okay.  Now, Mr. Hines traveled to an apartment building; is

1    that correct?

2    A    That's correct.

3    Q    And was R.T. found in one of the apartments?

4    A    Yes.

5    Q    And referring to the stipulated factual basis, what happened

6    once he was found?

7    A    He was located in the bathroom of an apartment.  R.T.

8    voluntarily exited the bathroom and complied with the officer's

9    commands.  Then the defendant, Mr. Hines, took R.T. to the floor,

10   pinned him down, and restrained him in a way that prevented him

11   from moving or resisting.

12   Q    Okay.  And then was unnecessary force employed?

13   A    At this point Hines then kneed R.T. in the side and back

14   several times and struck R.T. with his baton several times in the

15   back of his legs.

16   Q    Okay.  What happened next?

17   A    At the time that he struck R.T. with the baton, R.T. was

18   restrained and compliant.  The force used by Hines was

19   unjustified and unnecessary in that R.T. posed no threat to Hines

20   or anyone else at the time of the beating, and Hines did this in

21   order to carry out the high ranking IPSO official's commands,

22   assaulted R.T. to punish him for his prior assault of the high

23   ranking official's relative.

24   Q    Once R.T. was removed from the apartment, did somebody else

25   hit him?

1    A    Once he was removed, the narcotics agent accompanying R.T.

2    hit him in the stomach and R.T. was handcuffed at the time.  He

3    was compliant and posing no threat or harm or risk to anyone.

4    Q    You said the narcotics agent accompanying R.T.  You mean the

5    other agent who accompanied Mr. Hines?

6    A    Oh, Mr. Hines.  That's correct.

7    Q    And so the person that hit R.T. in the stomach was not

8    Mr. Hines, but the other agent; is that correct?

9    A    That's correct.

10          MR. VAN HOOK:  Your Honor, I have no further questions.

11          THE COURT:  All right.  Thank you.

12          I don't have any -- or let me just ask this question:

13   The time frame between when he was told to go out and when they

14   went to do the arrest, it was relatively short?

15          THE WITNESS:  It was the same day, yes.

16          THE COURT:  Okay.  Thank you.

17          Any questions from counsel?

18          MR. EWING:  None from the defense, Your Honor.

19          THE COURT:  All right.  And nothing generated by mine,

20   I assume?

21          MR. VAN HOOK:  No, Your Honor.

22          THE COURT:  All right, then.  I don't have any other

23   questions.  You may step down.  Thank you.

24          All right.  Mr. Hines, I've gone over now the offense

25   and the elements of the offense with you.  You've heard this

1   particular testimony in connection with the stipulated factual

2   basis.  So I need to ask you:  Do you understand the elements and

3   agree that you committed each and every one of them?

4   　　　　　　　　THE DEFENDANT:  Yes, sir.

5   　　　　　　　　THE COURT:  All right.  Then having heard now my

6   explanation of all the elements, the maximum penalties, and all

7   the rights given up in the case and all the consequences of a

8   guilty plea, I need to ask you whether you wish to continue in

9   your guilty plea.

10  　　　　　　　　THE DEFENDANT:  Yes, sir.

11  　　　　　　　　THE COURT:  And I ask you:  As to the count in the

12  Bill of Information in this case, formally how do you plead?

13  　　　　　　　　THE DEFENDANT:  Guilty, sir.

14  　　　　　　　　THE COURT:  All right.  I am satisfied that Mr. Hines

15  fully understands the nature of the charge against him and the

16  consequences of a plea of guilty.  I find the plea entered is

17  voluntary and knowledgeably entered -- voluntarily and

18  knowledgeably entered and the plea of guilty is accepted as

19  entered.  Likewise, the written plea agreement submitted to the

20  Court is accepted in accord with Rule 11(c)(4).

21  　　　　　　　　Now, with regard to the sentencing date, obviously I'm

22  not prepared to give you a sentencing date at this time.  I think

23  you wanted to have some other discussions with regard to that.

24  　　　　　　　　So what I can indicate at this time is sentencing will

25  be noticed later, but not until completion of the presentence

 1   investigation report is submitted and shared obviously with the

 2   attorneys.

 3            Mr. Ewing, any additional comment at this point?

 4            MR. EWING:  No, Your Honor.  Thank you for

 5   accommodating us.

 6            THE COURT:  I'm sorry?

 7            MR. EWING:  Thank you again for accommodating us.

 8            THE COURT:  Okay.  Let me indicate just a couple of

 9   other things.

10            Mr. Hines, you have to continue to work with your

11   attorney who will assist you in being certain that the

12   information furnished to the people in probation who are going to

13   do that presentence report is accurate information.  It's very

14   important because that's your chance to give input into your

15   particular sentencing.

16            You will be required, if asked, to furnish your last

17   five years income tax returns to Probation Services within 45

18   days if they need the information.  If you don't have them, there

19   are forms that will be required for you to sign to request them

20   from the IRS.

21            And, likewise, counsel, for your benefit, so that we're

22   clear on the record, you are provided an opportunity to argue for

23   whatever sentence you deem appropriate by submitting a brief to

24   the Court, and we'll make it no later than 15 days before the

25   sentencing date.  Those briefs generally need to be filed under

```
 1   seal with a confidential copy to the sentencing judge and, of
 2   course, to the probation office.
 3          And the Court is going to consider, of course, all of
 4   the 3553(a) factors.  And what I tell lawyers who are in front of
 5   me all the time, it's good to address your arguments to what
 6   effect the 3553(a) factors ought to be or at least what you think
 7   it ought to be.
 8          You will also submit a reply brief within five days of
 9   the original.
10          Now, of course, filing a brief does not relieve you of
11   the obligation of providing objections to the probation officer
12   within 14 days from the date of receipt.
13          All right.  I'm a little unfamiliar with this.  What is
14   the detention status?
15          MR. VAN HOOK:  Your Honor, the government is not moving
16   for detention, but we'd just ask that the defendant no longer
17   possess firearms.
18          THE COURT:  All right.  Did you understand that already
19   before today?
20          THE DEFENDANT:  Yes, sir.
21          THE COURT:  I know as a police officer, you may have
22   access to them.  You cannot anymore.
23          THE DEFENDANT:  Yes, sir, I understand.
24          THE COURT:  All right.  I assume there was a
25   recognizance bond filed or is he on --
```

1          MR. VAN HOOK:  No, Your Honor.  This is a first

2    appearance.

3          THE COURT:  This is a first appearance.  There's been

4    no prior involvement with law enforcement?

5          MR. VAN HOOK:  No, Your Honor.

6          THE COURT:  Okay.

7          THE COURTROOM DEPUTY:  Judge, probation is on their way

8    up right now.

9          THE COURT:  Okay.  That's fine.

10          MR. VAN HOOK:  But the government has no objection to

11    him being released on his own recognizance.

12          THE COURT:  Yeah.  I think under these circumstances,

13    with your assurance, that's fine.

14          You will be released on your own recognizance without

15    signing a formal bond.  Okay?

16          THE DEFENDANT:  Yes, sir.  Thank you.

17          THE COURT:  That does mean you have to appear for any

18    other proceedings, and it also means if probation needs you over

19    there, you have to go.

20          THE DEFENDANT:  Yes.

21          THE COURT:  All right.  Anything else on this case?

22          MR. VAN HOOK:  No, Your Honor, not from the

23    United States.

24          THE COURT:  We'll be in recess until the next matter.

25                       _  _  _

1                          Certificate

2    I hereby certify this 26th day of September, 2016, that the

3    foregoing is, to the best of my ability and understanding, a true

4    and correct transcript from the record of proceedings in the

5    above-entitled matter.

6

7                              _/s/ LaRae E. Bourque_____

8                              Federal Official Court Reporter

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25